# IN THE COURT OF APPEALS OF IOWA

No. 19-0218
Filed March 4, 2020

**MARTAVES DESHONE KEYS,**
      Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
      Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar, Judge.

Martaves Keys appeals from the district court's denial of his application for postconviction relief. **AFFIRMED.**

Francis Hurley of Phil Watson PC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**VAITHESWARAN, Presiding Judge.**

A jury found Martaves Keys guilty of two counts of first-degree murder in connection with the shooting deaths of two individuals. This court affirmed his judgment and sentence. *State v. Keys*, No. 09-0522, 2010 WL 5050557, at *1 (Iowa Ct. App. Dec. 8, 2010). Keys filed a timely postconviction-relief application, which languished for several years. Following a hearing, the postconviction court denied the application.

On appeal, Keys contends the postconviction court erred in "failing to rule on [his] effort to set [a] new and more stringent standard for postconviction relief pursuant to the Iowa Constitution" and in "declining to reach the issue of cumulative error." Keys also contends the court should not have denied his claims that his trial attorneys were ineffective in (a) making a brief opening statement, (2) failing to file a motion for change of venue, and (3) failing to request a jury instruction on officer credibility.

We begin with the standard for evaluating ineffective-assistance-of-counsel claims. The postconviction court applied the long-extant *Strickland* standard. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Keys acknowledges the court was "bound by precedent to apply the existing standard." He asks this court to "overturn" Iowa Supreme Court precedent and apply a more stringent standard. We are not at liberty to do so. *See State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed.").

We turn to the court's handling of Keys' allegation of cumulative error. The district court found "that none of the allegations against [his] counsel demonstrate

ineffectiveness and therefore the issue of whether errors can be viewed cumulatively need not be reached." Again, Keys acknowledges the postconviction court "correctly applied the binding precedent" of *State v. Clay*, 824 N.W.2d 488, 500 (Iowa 2012) ("Under Iowa law, we should look to the cumulative effect of counsel's errors to determine whether the defendant satisfied the prejudice prong of the *Strickland* test."). He asks this court to "find broader protection under the Iowa Constitution" and declare that "[e]ven if each individual instance of ineffective assistance of counsel is not a failure of an essential duty, all ineffective acts and omissions should be taken together to find a failure of an essential duty."

In *Clay*, the court held:

If the defendant raises one or more claims of ineffective assistance of counsel, and the court analyzes the prejudice prong of *Strickland* without considering trial counsel's failure to perform an essential duty, the court can only dismiss the postconviction claim if the alleged errors, cumulatively, do not amount to *Strickland* prejudice.

824 N.W.2d at 501–02. We are not at liberty to change the law.

We are left with Keys' challenges to the postconviction court's resolution of several ineffective-assistance-of-counsel claims. On direct appeal, this court observed, "Where the evidence of guilt is overwhelming, we will find no prejudice." *Keys*, 2010 WL 5050557, at *4 (citing *Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.")). We resolved two ineffective-assistance claims on this basis. We stated:

[T]he evidence of Keys's guilt was overwhelming. In addition to the properly admitted confession, an underwater search and recovery team located the gun used in the shooting at a point in the Wapsipinicon River where Keys said he threw it. A shell casing recovered from the vehicle in which the shootings took place was

positively identified as coming from the recovered gun. DNA profiles of blood taken from a home Keys went to after the shootings essentially matched the profiles of the two individuals who were shot and killed. Based on this evidence, we conclude Keys cannot establish *Strickland* prejudice and his ineffective-assistance-of-counsel claim necessarily fails.

*Id.* The postconviction claims suffer the same fate. Because the trial record contains overwhelming evidence of guilt, Keys cannot establish *Strickland* prejudice. That is the case even if the alleged errors are considered cumulatively. *See Clay*, 824 N.W.2d at 501–02.

In her opening statement, defense counsel did not dispute significant portions of the State's case. Nonetheless, she encouraged jurors to "keep an open mind throughout the whole case" because they would "not hear the rest of the story until almost toward the end." At the postconviction hearing, counsel testified she did not want to over-promise the jurors something; she simply wanted to underscore that "there's more evidence that's coming." Given Keys' confession and the evidence corroborating his confession, there is no reasonable probability that the outcome would have changed had counsel delved more deeply into the evidence during her opening statement.

We turn to Keys' claim that counsel should have filed a change-of-venue motion. At the postconviction hearing, counsel testified,

> [B]ecause of the sensational nature of it, we asked for a jury questionnaire to get a feel for the current jury we had, if they would be—have preconceived ideas or opinions about the case. And at that point in time, if those questionnaires came back indicating they were tainted because of the pretrial publicity, I would have asked for a change of venue.

The questionnaires of the twelve seated jurors were admitted as an exhibit. Although several saw a newspaper article the night before completing the

questionnaire and some heard about the case on the news, all twelve denied they had formed an opinion of the case. Because Keys could not establish actual prejudice on the part of the jury, there is no reasonable probability counsel would have succeeded in changing venue. *See State v. Morgan*, 559 N.W.2d 603, 611 (Iowa 1997) (requiring defendant to show "either actual prejudice or 'that the publicity attending the case was so pervasive and inflammatory that prejudice must be presumed'" (citation omitted)); *Borushaski v. State*, No. 01-1683, 2003 WL 183284, at *2 (Iowa Ct. App. Jan. 29, 2003) (rejecting ineffective-assistance claim based on failure to file a motion for change of venue where transcript of voir dire showed no actual prejudice).

We are left with Keys' claim that the jury should have received an instruction stating police officers were "no more credible tha[n] any other person." One of Keys' attorneys testified she did not seek the instruction because it was an issue she usually covered "in jury selection" and "it was not a stock instruction." More pertinently, the jury received a general credibility instruction stating jurors could "believe all, part, or none of any witness's testimony." In light of that instruction, a specific credibility instruction on law enforcement officers was unnecessary and would have been cumulative, precluding a finding of *Strickland* prejudice.

We conclude there is no reasonable probability of a different result had counsel given a lengthier opening statement, filed a motion for change of venue, and requested an instruction on officer credibility. Having found no cumulative prejudice, we conclude the district court appropriately denied the postconviction-relief application.

**AFFIRMED.**